The opinion of the Court was delivered by
Nott, J.
The only security which the citizens of any country, can have for their property,-or even for their lives, is derived from the promulgation and certainty of the laws. One of the most distinguished features in the *administration of the Emperor Caligula, whose name fs proverbial for his tyranny, was, that he caused his edicts to be suspended so high that they could not be read by his subjects. And since so much of our knowledge of the law is derived through the medium of courts of justice, the certainty and uniformity of their decisions may not perhaps be considered of less importance than the promulgation of the laws themselves. Whenever, therefore, a case has been decided by the highest tribunal of the country, it ought not to be overruled, unless, upon reconsideration, it shall be found to invade some radical principle of justice, or violate some previously established rule of law. And the inquiry which we are now to make is, whether the ques *325 tion submitted for consideration has been so solemnly settled, and on such principles, as to preclude any further investigation ?
The case of Walton & Pagan v. Bethune,[1] which was argued in this Court, in January, 1810, has ever since that time been referred to as a leading case on the subject. The judges took time to consider the question, and after much deliberation, gave their opinions in favor of the eonclusiveness of the sentence. And although this case has been argued on a supposition that there was not a majority of the Court in favor of that opinion, I have always understood from the judges then on the bench, that it had the concurrence of at least five out of six of those who then composed this Court; and that it was then thought.to be in conformity with the general current of decisions prior to that time, though there had been some diversity of opinion on the subject.
In the case of David Bailey v. The South Carolina Insurance Company,[2],(b) it was conceded that the principal question had been settled, and the counsel in their arguments were restricted to the question, whether a decree condemning property as “ good and lawful prize,” was equivalent to a condemnation as “enemies’ property.” A majority of the judges present, were of opinion, that, that case formed an exception *to the general rule; but they distinctly declared, that they felt bound by the former decision, as far as it went.
The next was the case of Wiseman and Lorent,[3] where the question was again made. The Court at first refused to hear argument on the main question, but at length yielded, as they have done in this ease, to the persevering importunity of the counsel.
The same distinctions which have now been taken, were then pressed with all the vehemence and zeal which the importance of the case could inspire, and with all the ingenuity which talents could suggest. But the Court still adhered to their former opinions, and the case was decided on other principles.
Thus has there been three cases in succession recognizing the same principle.
But it is now contended, that the technical meaning of the word “ prize,” is “ property taken from an enemy,” and that there is no such distinction between the cases of Walton & Pagan v. Bethune, and Bailey v. South Carolina Insurance Company, as was made by the Court, and therefore the latter decision went to destroy the former, and left the question still open for argument. In answer to which, it might be enough to say, that the Court has decided that there was a distinction between the two eases.
But let it be admitted, that the legal lexicographical definition of the word “ prize,” is as contended for ; yet, it is well known, that it is often used, not only in common parlance, but in the decrees of Admiralty Courts, to signify any goods, the subject of marine capture. The language of the French Decree, of the 21st November, 1806, is, that vessels acting in contravention thereof, (i. e. neutral vessels,) together with their cargoes, shall be declared “ lawful prize.” 1 Edwards’ Admiralty Reports, Appendix, 8. American State Papers, vol. 5, p. 418. The British Orders of Council, of 11th November, 1801, also subjected neutral *326 vessels, coming within their prohibitory provisions, and their cargoes, to condemnation, as “prize *to the captors.” Id. Ibid, 13. American gtate paperSj Y0]_ g; p_ 63. Under which several American vessels were condemned as good and lawful prize. 1 Ed. Ad. Rep. 32. The Comet. Do. 311. Fox and others. - The terms, therefore, “ good and lawful prize,” do not necessarily imply that the goods'were enemies’ property, which was the ground on which the case of Bailey v. South Carolina Insurance Company, was decided. But even if it were otherwise, the question was put to sleep by the case of Wiseman and Lorent, which was decided by a full bench. It is true, some of the judges, of whom I was one, did express their disapprobation of the principle on which the case of Walton & Pagan v. Bethune was decided. But I nevertheless felt bound by the decision. I did also prophecy, (as the learned counsel has been pleased to term it,) that that decision, as well as the English decisions, bottomed on the same principles, would be reconsidered, and probably reversed, at some future period. And I still entertain doubts, whether, if the same state of things had continued, which existed at that time, those decisions would have maintained their ground to this day. But since they have survived the tempestuous scenes which shook the very foundation of the whole civilized world; since they have been maintained in England, through a period of convulsions, which I might almost say, had converted all Europe into so many nations of freebooters and pirates; since the principle has been adhered to by this State, recognized by the Supreme Court of the United States, (Croudson, et al. v. Leonard, 4th Cranch, 434,) and followed by almost all the States in the Union, I cannot think it wise, now the storm has gone by, and when we may hope that sound and sober reason has agaiu resumed her empire over the nations of the earth, to set afloat a doctrine which appears to have been so long and solemnly settled. My mind has undergone no change with regard to the correctness of the rule; but it is one, the importance of which depends more on its being settled, *known and uniform, than the manner how settled. The parties know the mutual risks which they have to run, and may obviate the difficulty by express stipulation, as is now often done.
Prioleau, for the motion. K. L. Simons, and ILayne, Attorney-General, contra.
I am of opinion, therefore, that the question ought not again to be opened, and that a new trial ought to be granted.
Bay, Johnson and Gantt, JJ., concurred.
Colcock, J., dissented.

 2 Brev. 455.

 3 Brev. 354; 1 Tread. 381.

 MS. 1816. 1 Rice Dig. 342, § 11, 18.

 David Bailey v. South Carolina Insurance Company.
Charleston, May, 1809.[1]
Mr. Justice Nott delivered his opinion as follows:
The importance of this case is not derived from the novelty of the question ; nor its difficulty from all the light which the subject is capable of; for it has been so fully argued and ably considered, both in Europe and America, that a person need only give an opinion on either side, and the reasons on which that opinion is founded will at once appear familiar to every lawyer. But it is rendered important from the great interest which the whole world (I may almost say,) has lately taken in it; and the effect which the ultimate decisions of the courts in the United States may have on the mercantile interests not only of America, but all the nations of Europe with whom we have commercial relations. And its difficulty is occasioned by the conflicting opinions of the ablest judges and lawyers in England and the United States ; a difficulty* not a little enhanced by the doubts expressed by some of the ablest judges, of the correctness of decisions, to the binding efficacy of which they are bound to submit.
The question, whether the sentence of a foreign Court of Admiralty shall, in any case, be conclusive, on a policy of insurance, is not now before us. This court has already declared, that it is so wherever goods are condemned as “ enemies’ property,” (Walton and Pagan v. Bethune,)[2] or rather it is conclusive as to 'everything which it professes to decide; and where it declares property to belong to an enemy, it is conclusive of that fact. Not having been a member of the bench when that decision took place, I shall give no opinion upon it; but shall consider myself bound by it until those of my brethren who did then, or now, concur in it, shall be disposed to review their opinions. That decision appears conformable to the settled doctrine in England. Geyer v. Aguilar, 7 D. & E. 691. But, that it will be reconsidered, both in England and the United States, I entertain no doubt. Whether it will be reversed or not, I will not pretend to determine. But the modern innovation, made by the belligerent powers of Europe on the laws of nations — indeed, I may say, the total disregard which they have shown to all the natural and moral obligations by which nations have heretofore been governed, will not only require a review of opinions founded on principles which no longer govern, but will authorize a departure from the most solemn decisions founded on reasons which no longer exist. I cannot believe that the English judges will suffer the shackles of former decisions long to chain them down to a blind and passive obedience to decrees founded on evidence, “ unsatisfactory to an honest mind,” (Justice Gross, Lothian and Henderson, 3 B. & P. 534. Cooper’s Opinions, 49,) manifestly unjust, (Heath, Justice, B. & P. 537,) “founded on Algerine, or worse than Algerine, principles,” (Lord Kenyon, 7 D. and E. 691, Geyer v. Aguilar,) “making tlie law a stalking horse for piracy,” (Ibid,) “proceeding on a system of plunder.” (Lord Kenyon, Pollard and Bell, 8 D. & B. 437.) Neither will the American tribunals be more disposed to respect the sentences of the Vice Admiralty Judges of England, who hold their commissions at the will of the crown, and the amount of whose salaries depends, in a great measure, on the number of condemnations. Nor indeed of their higher courts, while the orders of the King and Council are held in relation to the laws of nations as acts of parliament are to *328 the common law. Vide, Fox et al., 1 Edwards’s Adm. Rep. 311. But, at present, that question is considered as put to rest.
The only question is, whether a condemnation is “ good and, lawful prize,” is tantamount to a condemnation as “ enemies’ property ?”
Before I proceed to a particular consideration of this question, I would observe, that the English judges do not now submit to the conclusiveness of foreign sentences, because the principle itself is correct, but because they consider the question settled by former adjudications. Geyer v. Aguilar, 7 D. & T. 691. If, therefore, it can be shown, that those decisions are founded on reasons which do not authorize the eonclusions .drawn from them, it will, at least, prove that we are not bound to carry the doctrine further than it has already been carried.
The reasons are:
Because all the world are parties, and therefore all persons ought to be ^concluded by them. Lord Mansfield, Bernardi and Motteux, Doug. 580. Park, 464.
2. Because their decisions are governed by the laws of nations, or the obligation of treaties. Lord Kenyon, De Souza v. Ewer, Park, 360.
3. Because it is a comity due to nations. 5 East, 99. Baring v. The Royal Exchange Assurance Company, 7 D. & E. 695. Geyer v. Aguilar, Lord Kenyon. Fisher v. Ogle, 1 Campbell, 420, Lord Ellenboroirgh.
With regard to the first, it is not a fact. The underwriters are never a party to the suit between the captors and the insured: aud the captors are never a party to the suit on the policy.
2. The second is, because their decisions are governed by the laws of nations, and treaties which are engrafted upon them. But this again is not always true. The courts of all nations feel bound by, and are always governed by, the municipal laws and decrees of their own government, although they contravene the laws of nations. In the case of Uayne and Walter, Park, 263, the ship was warranted to be Portuguese. She was taken by a French privateer, and condemned as “good and lawful prize, ’ ’ under a French decree, merely because she had an English supercargo on board. But Lord Mansfield declared it to be an arbitrary and oppressive regulation, contrary to the laws of nations, and that the party ought not to be concluded by it. The French decree of the 21st November, 1806, declares that vessels (neutral,) which violate its provisions, shall be declared “lawful prize.” 1 Edwards’ Adm. Rep. Ap. 8. The British Orders of Council of the 11th November, 1807, subject (neutral) vessels, under similar circumstances, to condemnation as “prize to the captors.” Id. ibid., 13. And under these decrees and orders, several American vessels were condemned. The Comet, 1 Edwards’ Adm. Rep. 32. Ibid., 311. Fox and others. So that it is incorrect to say, that “ all Admiralty Courts proceed according to the laws of nations and treaties. ” Indeed, Lord Kenyon himself, in the case of Pollard and Bell, 8 D. & E. 434, admits that it is not the case with the French Courts, where, he says, they proceed on a system of plunder. And Sir William Scott expressly admits it in the cases above mentioned, when he makes the laws of nations yield to the orders of the King and Council as the common law does to acts of parliament.
3. The last ground is, that it is a comity due to nations to respect the decisions of their courts. I understand comity to mean respect, or what, between individuals, would be called civility or politeness. But what respect can be due to the judicial acts of Courts that “proceed on a system of plunder,” “ on i>rinciples manifestly unjust,” “on Algerine, and worse than Algerine, principles.’,’ Courts which, when they shall learn, that the terms in which their sentences are couched, do not render them conclusive, will adopt such phraseology as will render them so without regard to the real grounds of condemnation. Fisher and Ogle, 1 Campbell, N. P. C. 418.
None of the reasons, then, on which the decisions of the English Courts of Common Law have gone, will support their decisions. The time once was, when the laws of nations were respected, and when treaties were regarded as imposing some obligations on nations. The time once was, when even England and France, at least, affected to be governed by the rules of common honesty, an<t ^heir Courts of Admiralty to be influenced by a sense of moral ^justice. And when Courts of Admiralty actually did proceed according to *329 the laws of nations and the obligation of treaties ; then indeed such comity might be due to their decisions ; then each nation stood in relation to the other as different districts of the great republic of nations, governed by one great uniform system of laws. And in that point of view, probably it was, the subject was considered, when it was said all the world were parties. But national confidence is destroyed. The English decisions are no longer entitled to our respect, when Sir William Scott, the great oracle of maritime law and the laws of nations, who, like Lord Coke, was thought to be, not merely the expounder of the law, but the law itself, has declared from the bench, that the laws of nations are no longer to be the rule of decision, but that the decrees of his Court must vary, according to the varying policy of the government. For while, he reads the laws of nations, through the instructions of his government, (in whatever language he may dress it up,) it is the will of the executive that governs, and not the law.
I have already remarked, that the English judges themselves, are so well satisfied, that the reasons on which the decisions of their Courts profess to be founded, will not boar them out, that they do not now pretend to make them the grounds of their present decisions. Their language is, “ stare decissis” They acknowledge that they follow those decisions, only, because the law has been too long settled, to be now shaken. Lord Ellenborough says, it is by an overstrained comity, that these sentences are received as conclusive evidence of the facts, which they positively aver. And that, like Lord Tkurlow, he shall die in the belief, that they ought never to have been admitted. Ogle and Fisher, 1 Campbell N. P. C. 418. Donaldson v. Thompson, Ib., 429.
But without disturbing the decisions as far as they have gone, let us proceed to the question immediately before us, and inquire, whether to condemn as ‘1 good and lawful prize,” is tantamount to a condemnation as “enemies’ property ?”
This question may be considered in a two-fold point of view:
1. Whether it is necessarily implied by the terms of the decree, that it is enemies’ property ?
2. Whether it has been so decided by any Courts, whose decisions we ought to respect, and by which we ought to be governed ?
With regard to the first. If there are other causes of condemnation, than that the property belongs to an enemy, which would make it “good and lawful prize,” then condemning it for such cause, does not necessarily imply that it is enemies’ property, yet the decree would declare it to be “good and lawful prize.” And I have already shown that such cases may exist. Vide Mayne and Walter— The Comet — Fox and others, and all other cases coming under the French and British edicts, which I have noticed. If the decree always set forth the reasons and grounds of the condemnation, the difficulty would be removed. But no reasons will ever be given, if the decree will be held conclusive without them. Nothing appears more obvious, then, from a comparison of all the cases, than that a condemnation as lawful prize does not necessarily imply that it is enemies’ property. We may therefore receive a decree condemning goods as enemies’ property, as conclusive, and yet admit an investigation into the causes of condemnation as ‘ ‘ good and lawful prize, ’ ’ without inconsistency. It appears to me absurd to say, that a decree shall xnot be conclusive where reasons are given which do ¡-*545 not authorize the conclusion ; and yet to admit it to be so when the grounds *■ of condemnation are the same, merely because the grounds are not stated in the decree. I am of opinion, therefore, that evidence ought to be received, to show what were the grounds of the decision.
There does not appear to me to have been any decision of this court on the point. In the opinion given in the case of Walton and Pagan v. Bethune, it is said, such a decree is not conclusive ; but perhaps that ought to be considered the opinion of an individual j udge, rather than the opinion of the Court, because it was not a point then before the Court. But it is sufficient for my purpose, that the contrary was not decided. And it appears to me, as far as I have been able to investigate the subject, it still remains undecided in the English Courts. In the case of Salouci v. Woodmass, Park, 362, Lord Mansfield held a decree of condemnation as “good and lawful prize, ’ ’ conclusive, though no special ground was stated. But in the case of Calvert and Boville, 7 D. & E. 523, Judge Lawrence says, “if it is ambiguous, or it does not appear on the face of the sentence on *330 what ground they proceeded, then we may receive evidence to show, what were the grounds of the decision abroad.” And in the case of Ogle and Fisher, 1 Campbell, N. P. 0., the sentence was not admitted to be conclusive. That was an action on a policy of insurance, on the Juno, represented as an American ship, which had been condemned in a French Court of Yice Admiralty, at Martinique. The sentence was in these words : ‘1 That it resulted evidently from the papers on board, that the expedition of the said ship Juno, her cargo, and the operations of her captain on the coast of Africa, were for account of the brothers Geddes, merchants of London, who had, to mask the English'property of this outfit, borrowed the American flag and passport of the said ship Juno, and taken for their agent and partner' in the expedition, Captain Fisher, furnished with a certificate of citizen of the United States.” It then goes on to condemn vessel and cargo, “ as good and valid prize,” without stating any specific ground of condemnation. Lord Ellenborough said, “we show sufficient respect for French sentences, if we attach credit in our courts to what they distinctly say. It is often painful to go this length, considering the piratical way in which they proceed. Rut this sentence does not say that the ship was not American; and it is not to be considered as evidence of what it does not specially affirm.” A verdict was found for the plaintiff, and on a motion for a now trial, he says, “ it is by an overstrained comity that these sentences are received as evidence of the facts which they positively aver, and on which they specifically profess to be founded.” The other judges were of the same-opinion, and a new trial was refused. I think, therefore, the weight of the English authorities is against the conclusiveness of such a sentence; and the modern belligerent code affords no ground to extend the comity of nations. The laws of nations and the obligation of treaties afford no security. It is truly said, “that in the iniquitous conflict between British Orders and French Decrees, scarcely a vessel navigates the ocean, that is not subject to the denomination of “good and lawful prize, ’ upon the text or construction of the new belligerent code ; and a rapacious Court of Admiralty stands forever open to invite the approach of its victims, sed vestigia nulla retrorsum. ’ ’
Fpon the whole view of the subject, therefore, I am of opinion, that the *decree or sentence of a foreign Court of Admiralty, condemning a vessel oj. cargo as “good and lawful prize,” without assigning the reasons and grounds of the decision, ought not to be received as conclusive evidence of a breach of neutrality on a policy of insurance; and that a new trial ought to be granted in this case.
A majority of the court concurred.
Draytox, for the motion. Ward, contra.
N. B. The judges, at that time, delivered opinions separately. R.

 S. C. More fully reported. 3 Brev. 354, or 1 Tread. 381.

 2 Brev. 455. This case, inserted by the reporters, could not have been the one that Judge Nott referred to, for he was present at the decision of this. Probably one of the cases in Bay, cited in note supra, or some case not reported, was meant.